# Southern Cotton Oil Co. *v.* Bass *et al.*

*Action to recover Damages for Breach of Bond.*

1. *Bond; surety signing bond on condition that it should be signed by another.*—Where one who had declined to become surety upon a bond, unless it was signed by a certain named person, subsequently, upon the bond being presented to him with the name of said person signed thereto, also signs the bond as surety, he is not bound thereby if the name of such third person was forged.

2. *Same; Same; ratification.*—Where one whose name was forged to a bond, after the delivery of the instrument and after default on the part of the principal, settles his supposed liability by the payment of an agreed amount, such payment on his part is not a ratification of the forgery in such sort as to render the bond a binding obligation upon another surety who signed it upon condition that the man whose name was forged thereto should also become a surety thereon.

APPEAL from the City Court of Talladega.

Tried before the Hon. G. K. MILLER.

This action was brought by the appellant, the Southern Cotton Oil Company, against T. H. Bass, as principal, and one B. L. Gaddis, and the firm of Lane & Hebson as sureties on the bond, conditioned for the faithful accounting for money, etc., to be advanced Bass by the plaintiff as its agent.

The complaint averred the defalcation on the part of Bass, and thereby the breach of the bond sued upon. There were several pleas filed, but the question presented on the present appeal arose upon issues joined on the 10th amended plea. The 10th plea, as amended, was in words and figures as follows: "10. A short while before defendants Lane & Hebson signed said bond, said Bass applied to said defendants to become sureties thereon, whereupon said defendants informed said Bass that they would become sureties on said bond only in the event one B. L. Gaddis would also sign said bond and

become surety thereon, and that said Bass did thereafter bring said bond to said defendants with the name of B. L. Gaddis signed thereto as surety, and whereupon said defendants did. sign said bond, and that it was afterwards delivered to plaintiff without any notice or knowledge on the part of these defendants that the name of said Gaddis to said bond was a forgery, and defendants say in reality said Gaddis did not sign said bond, and had not become surety thereon, and that the signature of his name thereto was without his authority or act, and was a forgery." To this plea the plaintiff demurred upon several grounds, which were substantially as follows: 1. Said plea is insufficient in law as a defense to the present action. 2. Said plea does not show that plaintiff ever had any knowledge that the defendants Lane & Hebson had signed the bond, because of representations to them that Gaddis had signed it, and it fails to show that the alleged forged signature of Gaddis, or that the alleged condition on which the defendants Lane & Hebson signed said bond, was known to the plaintiff. This demurrer was overruled, and the plaintiff duly excepted. Thereupon the plaintiff filed the following replications to the 10th plea as amended: "1. For further replication to said tenth plea, as amended, says: that B. L. Gaddis, before said Lane & Hebson sought to avail themselves of said alleged release, and before plaintiff was informed of any of the facts therein alleged to exist, ratified his signature to said bond, and paid his liability thereunder, to-wit, one-half of $237.66, plaintiff accepting in settlement thereof $75."

"2. Comes the plaintiff, and for reply to the plea marked tenth, as amended, says that it did not at any time before the commencement of this suit have any knowledge of the alleged conditions made between Lane & Hebson and said Bass, that B. L. Gaddis would execute said bond sued on, and become bound thereby; that if such agreement was made the plaintiff had nothing to do with it; that after it became known to plaintiff that said Bass was in default, it notified said Lane & Hebson and said Gaddis thereof, and said Gaddis ratified his signature to said bond and recognized his lia-

bility thereunder, and paid to plaintiff his said liability without ever claiming that he was not bound by said bond; that the defendants Lane & Hebson, and neither of them, ever notified plaintiff that they were not bound by said bond, but even after they knew of the breach of said bond by said Bass, and of the settlement of the liability of said Gaddis thereby, they recognized their liability on said bond and tendered to this plaintiff a sum of money, to-wit, $89.81, which they admitted to be due."

To the first replication the defendants demurred upon the grounds: 1. That it was not averred therein that Gaddis ratified the forgery of his name to such bond before the breach thereof. 2. That the facts averred in said replication were not sufficient to impose a liability upon the defendants.

To the second replication the defendants demurred upon the following grounds: 1. For that knowledge of the facts set up in said 10th plea by the plaintiff was not necessary. 2. For that the said Gaddis could not so ratify his alleged execution of said bond so as to bind these defendants after breach of the same by the principal. 3. For that the ratification alleged to have been made by the said Gaddis is not shown to have been made in such manner so as to relate back to the time of the execution of said bond, so as to bind these defendants. These demurrers were sustained, and the plaintiff duly excepted. Upon issue joined upon the 10th plea, as amended, the following facts were shown: Lane & Hebson were approached by Bass and asked to sign the bond as sureties. They declined, but said they would do so if Gaddis would first sign as a surety. Two or three days afterwards Bass returned with the bond, telling Lane & Hebson that Gaddis had signed it. Whereupon Lane & Hebson signed their firm name under that of Gaddis on the bond, as sureties. Gaddis' name had been forged, but Lane & Hebson did not know it was a forgery. It was then delivered by Bass to plaintiff, who did not know it was a forgery. After the default here sued on had occurred, Gaddis was informed for the first time that his name was on the bond. After this suit was brought, his son-in-law,

Lancaster, living at a distant place from him, made some sort of settlement with plaintiff on account of Gaddis' name being on the bond; Bass being also a son-in-law of Gaddis. Gaddis paid out no money, had not at time of trial been called on for any, and did not know that he would ever be called on to pay anything. Lane & Hebson knew nothing of, and had no notice of, nor had any intimation that Gaddis' name was forged to the bond, until long after suit was brought on the bond. There was no judgment asked for as against the defendant Gaddis.

The court, at the request of the defendants Lane & Hebson, gave the general affirmative charge in their behalf, to the giving of which charge the plaintiff duly excepted. There were verdict and judgment for the defendants. The plaintiff appeals, and assigns as error the several rulings of the trial court, to which exceptions were reserved.

FRED S. BALL, for appellant.—"A subsequent surety is not to be discharged because the name of a prior one has been forged. His own signature is an implied assertion, of the genuineness of those which preceded it, for it is not to be presumed that a man would affix his name to a bond when the prior names were forged."—*York, etc., Co. v. Brooks,* 51 Me. 506. The reason of the rule is that "when one of two innocent persons must suffer by the tortious act of a third, he must bear the consequences who gave the wrong-doer the means of doing the wrongful act."—*Young & Son v. Lehman, Durr & Co.,* 63 Ala. 519; *Bigelow v. Comegys,* 5 Ohio State, 256; *Stoner v. Milliken,* 85 Ill. 218; *Lombard v. Mayberry,* 24 Neb. 674; *Selser v. Brock,* 3 Ohio State, 302; *Helms v. Wayne, etc.,* 73 Ind. 325, and numerous authorities; *Stern v. People,* 102 Ill. 540; *Hall v. Smith,* 14 Bush (Ky.) 604; *Colquitt v. Simpson,* 72 Ga. 501; 2 Brandt on Suretyship, etc., § 412.

WHITSON & GRAHAM, and BROWNE & DRYER, *contra.* Even when a surety becomes such, he may stand on

the letter of his contract, and is bound only by its terms. His liability cannot be varied without his consent. A material alteration made in the contract, to which his assent is not obtained, even though beneficial to him, absolves him absolutely from all burden imposed by the contract. A contract of suretyship is essentially a promise to answer for the debt, default or miscarriage of another. The surety stands in a purely voluntary and gratuitous relation.—*Crescent Brewing Co. v. Handley,* 90 Ala. 488; *Anderson v. Bellinger,* 87 Ala. 336; *City Council v. Hughes,* 65 Ala. 201.

If a person signs a bond as surety only, entrusting it to the principal obligor for delivery, but with authority to deliver it only on condition that another person joins as surety in its execution, and the principal without authority delivers it, such other person not having joined in its execution, the person so requiring is not bound, even though the obligor accepted it innocently. This rule of law applied in Alabama to official as well as unofficial bonds before the statute, changing the rule as to official bonds, but not as to such as the one sued on in this case.—*Guild v. Thomas,* 54 Ala. 414; *Evans v. Daughtry,* 84 Ala. 68. So, if such other person signs but before approval his name is erased.—*King v. State,* 81 Ala. 92. So, if such other person's name is placed on the bond, but without authority.—*Sharp v. Allgood,* 100 Ala. 186. A bond is executed when delivered, not when signed.—*Frost v. Leonard, et als.,* 116 Ala. 82.

HARALSON, J.—Appellant's counsel states in his brief and argument that "the 10th plea, as amended, raises the main questions of law in the case." Agreeing with counsel, we shall confine ourselves to the consideration of these questions.

The case of *Sharpe v. Allgood,* 100 Ala. 183, lays down the principle on which the case is to be determined. There, Sharpe refused to sign the note, on which his suretyship was sought by Thos. Stewart, the principal debtor, unless A. M. Stewart would also sign it as surety. On no other terms was Thos. Stewart authorized to use the paper. Later in the day

Thos. Stewart returned to Sharpe with the note signed by himself and also bearing the name of A. M Stewart signed thereto, whereupon Sharpe signed it. Allgood, the payee in the note, was not present during either of these conversations or transactions, and, from anything appearing, knew nothing of them. It afterwards developed that A. M. Stewart did not sign the note, and that his name was signed to it without his authority, and that he had not ratified it. He was sued on the note prior to the action against Sharpe, and successfully defended the suit on the plea of *non est factum*. This court held, on appeal, that if the jury believed Sharpe's account of the transaction, such as has been substantially stated above, and that he signed the note and consented to be bound only on the condition that A. M. Stewart would become the co-maker, and they further found that A. M. Stewart's name was placed there without his authority or ratification, then this was a defense to Sharpe in the action. The court further held, that it was no defense that Allgood, the payee, was not informed of this condition anterior to his acceptance of the paper, that it was his duty to inform himself of the genuineness and binding obligation of the signatures before accepting and acting on them.

In the case before us, it was proved by Gaddis himself—and admitted by plaintiff—that he did not sign nor authorize his signature to the bond sued on, and did not know of the existence of the bond until after the default sued on, and that the payment to the plaintiff of the $75 by him on account of said bond was not made until after this suit was instituted, and that the ratification attempted to be set up did not occur until after the default sued on.

On the authority of the case of *Sharpe v. Allgood, supra*, and the authorities there cited from this court and the courts of other States, it is clear that the defendants, Lane & Hebson, had the right to stand on the condition of their contract with Bass, by which they consented to become sureties, and on which they signed said bond as such; that it is no answer to this defense that the plaintiff, the obligee in the bond sued

on, was not informed of this condition before or at the time he accepted said bond, and that it was his duty to inform himself of the genuineness and binding obligation of the signatures before accepting and acting on them. The only possible reply to this proposition is the alleged ratification by Gaddis of his signature to the bond. One can understand, if Gaddis, before the delivery of the bond to, and its acceptance by, the plaintiff, having been informed of his unauthorized signature thereto, ratified and adopted it, as though he had signed it in person in the beginning, that he could not, after its delivery to plaintiff, dispute his signature to the same, and its binding obligation on him. He would be estopped to do so, on every just principle known to us. But, in this case, as is pleaded and shown, Gaddis' signature to said bond was unauthorized, and in palpable violation of the condition on which defendants signed the bond as sureties, in that they were induced to append their signature thereto by the misrepresentation and fraud of Bass, when he informed them that Gaddis had signed the bond, and this fact was not known to defendants until after the delivery of the bond to plaintiff. Moreover, it was shown, that this unauthorized signature of Gaddis was never made known to Gaddis, or plaintiff, till after the delivery of the bond and its acceptance by plaintiff, and, as for that, not even until after the default sued on in this case. There exists no room, therefore, for the plaintiff to set up Gaddis' ratification of his signature as an answer to defendants' plea, and to fix a liability on them. A ratification such as is referred to in the *Sharpe v. Allgood* case, was necessarily one anterior to the delivery and acceptance of the bond by the plaintiff. Otherwise, it would set aside and render nugatory the contract of defendants in agreeing to become sureties on the bond, which a court is not authorized to do.

There was no error in the ruling of the lower court in sustaining demurrers to the replications of plaintiff to defendant's 10th plea as amended. The facts of that plea, to which a demurrer was rightly overruled,

were fully proved, without conflict in evidence, which authorized the general charge as given for defendants,. Lane & Hebson.

Affirmed.